Good morning, your honors. Barry Morris appearing for Alena Aleykina. This is my first maiden effort on Zoom, so it feels a little awkward. I'd like to start with the first issue, namely the exclusion of vital defense evidence of mental instability from her husband as to her mental instability at the time. This is particularly important in a tax case because the law requires not just that the government prove that the act was done, but also that it was done knowingly. In this case, the judge simply said that it was irrelevant what the husband thought about her her mental stability, and it was inadmissible because there was no notice given, and he wasn't an expert. Well, of course, you don't need to give notice of any kind of a mental defense except for expert testimony. Here, clearly, the husband was going to testify that there was something wrong. It's difficult to imagine your spouse planting fruit trees at random in the backyard. I mean, that's not normal behavior. There was other evidence that she was buying duplicate appliances for no apparent reason. I mean, if you got one blender, why do you need two? It suggests that there's something wrong going on. Now, of course, the government says, this is harmless error. There was lots of evidence, etc., etc., etc., but it's not harmless when you completely exclude a defense. There's no question here that this was the main piece of evidence, really the only piece of evidence. Counsel, I think you said a couple times that they completely excluded it, but I thought the government argued that, I did get to testify, correct? Yes, of course. And I thought the husband talked about her, quote, having trouble and that she had postpartum or something, so it doesn't seem like... That's true. That's true. He did testify, but that testimony in the context of defense is meaningless. Postpartum is, you know... First of all, postpartum is a general term that could apply to almost any kind of reaction to having a baby. It doesn't mean that your thoughts are generally confused. It just means that, you know, the very... I don't want to say traumatic, because that implies bad, but, you know, it's a life-changing moment, so that someone might react a little differently or feel odd now that they had this little thing to take care of. They can't tell them what's wrong with them and that you have to be, you know, a parent to. That's very different than planting fruit trees at random. The former is a natural process which does not put the powers of reason in abeyance, but on the other hand, what he wasn't allowed to testify was what was important, namely that she had confused thinking, that she was doing stuff that was weird that no rational person would be doing, and therefore the defense argued that this was relevant and vital evidence of her state of mind, which is extremely important in tax cases. It's important in all cases, but in tax cases, this is especially important because the government has a higher burden of proving that the person acted knowingly as well as intentionally. Was she, during this period of time we're talking about, was she still doing her job as a tax fraud investigator? Well, you know, one can infer that from the testimony, although it was no specific evidence relating the time to, you know, when she was working, but that appears to be a reasonable inference from the evidence. In any event, the other matter is that what is the standard review here? And I believe the standard review is de novo because it was a determination as a matter of law that the husband couldn't testify as to her mental state. The judge said because the government didn't have notice, which of course is not what the statute prescribes. The statute says you can't surprise the government with an expert, which of course makes sense because if an expert is going to present an opinion as complicated as an analysis of someone's psyche, they should be given notice so that they could prepare to meet that evidence. That wasn't the situation here. This is a lay witness. Then the question is, what's the, you know, what's the remedy here? Well, here we have the main piece of evidence. Also, can I ask you a question that's kind of a critic? If this was sort of the theory or one of the theories that she wanted to present in a trial, why didn't she get an expert to, it seemed that'd be more probative, I would think, for a jury to hear from an expert. I mean, there's a lot of problems that would keep her from being able to develop the requisite criminal intent, as opposed to having her husband testify about planting fruit trees. It seems a little off-base, but why didn't you do that? Well, first of all, I wasn't the trial lawyer, Judge. I'm also a trial lawyer, as an appellate lawyer, and I might have done it differently, but on the other hand, presenting psychiatric evidence is always difficult with the jury because the juries tend to be very skeptical of that kind of evidence. On the other hand, if the husband comes in and says, look, my wife was painting the staircases yellow when the rest of the house was blue, whatever it was, when you put it in terms that jurors can relate to, it sometimes has more persuasive force, even though the expert knows more, and if the question was won in a journal or among other people in the field of psychiatry, certainly an expert's opinion would be given more weight, but here, when you're dealing with jurors, it's tough to sell a psychiatric defense, and so it might have been, frankly, I think the way to do it would have been to present both, was to present first the theory with the psychiatrist, the psychologist, explaining the mental processes that appear to be going on, and then having the husband talk about it in practical terms. That would have been the better way of doing it, but as an appellate attorney, as judges, we're left with the record that the trial lawyer made. In any event, under United States v. Evans, it's 728 F3rd 953, it's a due process violation if the excluded evidence violates the dependent's due process rights. It's the main piece of evidence, and a critical evidence of the government's case. Here, this was her only defense. It was the main piece. What exactly was the defense? Excuse me. Well, the defense was multi-pronged in this case, because there were more than one crime alleged. As to the general filing of fraudulent tax returns, the defense was she wasn't in her right mind when she did it, and she didn't intentionally violate the law. As to the destruction of evidence, there are other defenses, so there wasn't one defense. I mean, you know, you take them as you find them. Yeah, but the only defense that goes to all the counts is the mental state. I'm sorry? The only defense that goes to all of the counts is the mental state. Correct. As to obstruction of evidence, the defense is, well, it didn't really succeed. You know, nothing was destroyed, and the statute doesn't punish attempts. Right, and as to claiming head of household, the defense is, well, there was wrong, impermissible testimony as to the degree of, as to the marital status. Clearly the court is on top of the issues here. I said clearly the court is on top of the issues here. The only one that's going to get your client off the hook entirely is the mental state. Yeah. Is that correct, counsel? Because my understanding was is that some of her, and I haven't parsed out which ones are which, but there's some of her crimes, and maybe we can ask the government about this, but some of the crimes she was charged with and convicted of don't require intent, and some of them, specific intent, and some do, and this was only to the intent-based crimes. I thought I saw that. It says to all crimes, because the differentiation is tax crimes. Tax crimes require knowing that conduct is illegal, whereas the other crimes require knowing, intending to do the act that you did without knowing whether or not it's legal. The theory being that the tax law is so complicated, you don't want to impose criminal sanctions unless the person actually knew what they were doing was wrong or illegal. Now the second issue is the expert testimony that the separation was a sham. I guess what I'm getting at, and this goes to, I'm looking at a brief, the government said that she does not dispute that she acted with the requisite intent when she deleted the, so maybe that, and so that instead it was that she didn't actually succeed in deleting them, but I mean to Judge Fletcher's question, then does the, does this argument about her not being in the right state of mind, is that, does that relate to her, the deleting of the files? Arguably not, but arguably yes, because if she was really, you know, non-compensamentist, it would relate to anything that she did. It's a question of what weight the jury gave that testimony. There's a higher standard of proof for the government as to the tax crimes, but there's still a burden of proof on the government to show that she acted with intent to do the things that she did, as opposed to her knowledge of the law. I probably should reserve some time for a rebuttal. I don't know what issues the government's gonna cover, but I'll save my reigning time for rebuttal. Okay, let's save your time and let's hear from the government. Good morning, your honors. May it please the court, my name is Nick Hill-Bagot, and I represent the United States in this appeal. Your honors, following a six-day trial, the jury convicted this defendant of each and every count of the indictment. The jury heard evidence that not only did she cheat on her personal taxes, but that she cheated on certain returns that she filed for real estate trusts, that she stole from her employer, and that she destroyed evidence once she filed the appeal. She raises three issues. I know that the court had engaged with Mr. Morris on the issue of the husband's testimony, so I'll start there. Judge Van Dyke, you talked about intent crimes, general intent versus specific intent crimes. Only some of the crimes here were specific intent crimes, and so counts one through six here were the tax counts, and those require a heightened state willfulness requirement. The other two crimes, count eight was stealing from the IRS, that was a 641 count, and count nine, which is the destruction of evidence count, both of those only require a knowingly mental state. And so to the extent that any of this evidence was going to bear on Ms. Alikina's ability to form willfulness, that would not apply to counts eight and nine. Yes, your honor. And as we note in our briefing, as to count nine at least, they don't challenge willfulness on appeal, and they don't appear to challenge it in the reply brief either. Your honor, these are really, we're really talking about two questions here that the district court sustained objections to, and the two questions had to do with the husband's observation of Ms. Alikina's behavior and of her demeanor. And these objections came after a series of answers. Mr. Hartzell, as Judge Van Dyke correctly noted, he testified that the defendant had suffered postpartum, that she just wasn't herself, that she was having trouble, that she maybe was too stressed at work. And that is the context in which the district court sustained the objections. Now we talk about this sort of post hoc rationalizations about the planting of the fruit trees and buying too many appliances and having a messy car. I think our position is, even if all of that is true, it's irrelevant to what we're talking about here, which is this willfulness state, which is, did she know of her duty under the federal tax laws, and did she knowingly and intentionally violate that duty? But you have to remember, we're talking about abusive discretion, and we're talking about the district court as it sat during the trial. And as it sat during the trial, the district court never received any sort of a proffer like this. It never received a proffer of this sort of planting the it was simply presented with defense counsel's assertion that he wanted to get out that Miss Alakena had certain behavioral traits and that she had certain demeanor traits. Um, and at that point, the district court made its decision and decided it was irrelevant. Now, counsel talked about how he would have presented this case, and he said, Well, I might have elicited some testimony from the husband, and I might have also had an expert testify as to how that would have tied in to willfulness. And I think if that was a scenario here, we would have a different case, because at that point, you would have had some relevance to the husband's observations. There would have been something tying the husband's observations to the, um, to the willfulness here and to the legal issues here. And here we just simply didn't have that. Even if the jury accepted all of what the husband said as true, it wouldn't have impacted the jury's. Um, it would not have impacted how the jury saw whether Miss Alakena had committed these crimes willfully or not. Um, your honors talking about the, um, the 15 19 issue, the argument on the 15 19 issue as well. These files weren't actually destroyed, and therefore I evidence wasn't sufficient. That's not true. So the files there's there's a significant amount of testimony in this case. One is one of the points is that there there are a number of files that were irretrievably destroyed that the government was not able to retrieve with forensic tools that the government's experts were not able to retrieve. Secondly, there's evidence that not only there's this file Bert dot zip, there's evidence that she had placed that file in the recycling bin that she had then deleted that file. She then, during this sort of period of time between when the IRS agents first came to her house and when they came back to her house after she had sent them on this sort of wild goose chase to her mother's house, that she engaged in a number of actions. She deleted her browser history. She tried to run this sort of disk defragmenter program. All of that for the express purpose of deleting these files in learned about for just a moment is Judge Fletcher. Uh, is it? Is it the government's position that she has to succeed? Or is it the government's position that she really had to try to do something in order to be obstructed under the statute? Your Honor, it is the government's position that Miss Alakena had to destroy, alter or conceal a file. Now, in Katakis, this court attempting to destruction under 15 9. I'm sorry, Your Honor. Justice is a pretty broad concept is very bonds learned to the sorrow. Your, um, 15 19 in this case, as it was charged in this trial, did not charge an attempt, and the government did not put forward the attempt theory. Here we have the government going forward on a number of theories, one of which is destruction, one of which is, uh, concealment and one of which is alteration. And we would submit that the government proved its case as to each of these different prongs of the statute. Is it sufficient if the government proved it as only one? Yes, Your Honor, that the government again, we believe that the government proved it as to all three of those parts of the statute, and it's it's sufficient that we proved it as to as to only one. Your Honor, just touching kind of briefly on that last point about, um, revenue agent van house and and separation. You know, the legal separation is just one little tiny part of the overall theory with respect to the false tax returns. She claimed had a household. She didn't claim marital status. Now, those are overlapping ideas, but they're not again. That's correct, Your Honor. The idea of whether or not she was married kind of larger question of whether she was entitled to head of household status. And and the other the other sort of part of this that we should remember is the jury isn't asked to determine whether or not she properly had house of household. I'm sorry. Head of household status. The jury is asked to determine whether there was a material false or incorrect statement on the tax return. Now, the government had the government theory was and that the jury accepted was that there were a number of falsities on each of these tax returns and that one of those was head of household. But even if we accept the head of household, even if we accept the, um, Miss Alakina's theory that, well, separation evidence shouldn't have come in through Mr Van house. There's another part to head of household, which is that she needed to provided more than 50% of the of the household expenses. In this case, in each of the three years, 2009 2010 2011, there's uncontroverted evidence that she provided substantially less than 50% of the household expenses. So your honors, we believe that the abuse of discretion is the correct standard, and we believe that this district court did not abuse its discretion with respect to each of the evidentiary arguments. And we also would submit that there's overwhelming evidence as to count nine. If the court has no further questions, we respectfully request that the court affirm the judgment of the district court. Thank you, Mr Morris. You've saved some time. Yes, there are three things I want to address. First, you know, the record that we have in the case is not perfect because what happened is as to the issue as to the husband's testimony. What happened is that there was an unrecorded sidebar. Now, as a judge, everybody makes their point. The judge issues a rule, and then you go back and, you know, you proceed with your examination in front of the jury. But the fact of the matter is that this discussion was only put on the record by the judge after the jury already been excused. At that point, all the participants know what was said at the bench, but they may be making when they heard it so you don't have to repeat what everybody knew. Now, the net result is you get a record that's incomplete. Here, we don't know whether or not the defense counsel specifically discuss the bizarre things that she was doing at this time. And so we don't know exactly what was said to the judge. What we do know is that the husband, his testimony was admissible, and that judge excluded it as a matter of law because the government didn't get notice of mental defense, ignoring the fact that the statute requires that the notice be applied to the use of an expert. As to the destruction of the files, you know, it's really interesting. No, the government had every file that they claim that she destroyed on her laptop on their main server. So it can't be that it's a crime to destroy your copy with the government has. I think so. I think it is. So like if if there's two copies of something, but I I shred all my copies, hoping they're the only copy. And so it turns out that the government has another copy. I think that's still obstruction. Wait a second. If I get police reports from the government or 302s, and I make a bonfire of them, that doesn't mean that the 302s aren't still in the government's file. They're still not in whatever court documents that were filed. Destruction means destruction, not destruction of copies. And I don't think there are any cases that say that if you make a Xerox copy of something that the government has that considers evidence that that's a crime. We'll have to look at that, counsel. But just to be clear, so it sounds it sounds to me like you are acknowledging that she did succeed in, you know, destroying some copies. But your argument is that because there were still copies of those documents left, you acknowledge she just she succeeded in destroying some copies and that they were never able to get those back? No, that goes a little further than what I'm saying. What I'm saying is that as a matter of law, destroying a copy of an original document that the government still has is not destruction of government property. It's not destroyed. What doesn't fit 1519? Finally, as to the sham, it seems to me that once you bring in evidence that the expert considers something a sham, jury's not going to listen to anything else. At that point, the well has been polluted with inadmissible evidence of this non expert, non California lawyer a testimony about what he considers California law. Oddly, in California law, separation doesn't require living in a separate house. So you can have separate separation by a decree, even though you're still living in the same house. And it seems like I've run out of time. So unless the court has further questions, no, I think no further questions of the bench. I think both sides for helpful arguments. Thank you. The United States President, Robert Pena, is now submitted for the decision, and that completes our argument session for this morning. Thank you. Thank you. Thank you. Thank you. This court for this session stands adjourned.
judges: Schroeder, W. Fletcher, Vandyke